*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *VINCE A. BERUBE,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 05-217-P-S* |
| | ) | |
| *CARLY CONLEY, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM DECISION ON MOTION TO STRIKE OR FOR LEAVE TO FILE*

The defendants, Carly Conley, Eric W. Syphers and Matthew Vierling, all Lewiston police

officers, move for summary judgment on all claims asserted against them in this action arising out of

the arrest of the plaintiff on December 17, 2003.[1]  Defendants Conley, Syphers and Vierling's Motion

to Dismiss and/or For Summary Judgment, etc. ("Motion") (Docket No. 8) at 1.  I recommend that the

court grant the motion in part.

**I.  Summary Judgment Standard**
**A.  Federal Rule of Civil Procedure 56**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "In this regard, 'material' means that a

---

[1] The defendants also move to dismiss Counts III and IV and a portion of Count V on the ground that the cause of action alleged in Count III, and from which Count IV and a portion of Count V derive, may be asserted only under the Fourth Amendment to the U. S. Constitution, but Count III refers only to the Fourteenth Amendment.  Motion at 6-8.  While that count of the complaint does erroneously refer to the plaintiff's "rights under the Fourteenth Amendment not to be subjected to an unreasonable degree of force," Complaint and Demand for Jury Trial ("Complaint") (Docket No. 1) ¶ 45, it also incorporates by reference paragraphs 1-42 of the complaint, *id.* ¶ 43, where the plaintiff avers that he seeks to enforce his rights "guaranteed under the Fourth . . . Amendment[]," *id.* ¶ 5.  A court considering a motion to dismiss for failure to state a claim upon which relief may be granted must "construe all reasonable inferences [from the factual allegations in a complaint] in favor of the plaintiff[]."  *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  Under this standard, the complaint is sufficient.  The motion to dismiss should be denied.

contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise"

statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (Citations and internal punctuation omitted).

## II.  Factual Background

At all relevant times, each of the defendants was a police officer employed by the City of Lewiston.  Defendants' Statement of Material Facts ("Defendants' SMF") (Docket No. 9) ¶¶ 1, 3, 7;

Plaintiff's Responses to Defendants' Statement of Material Facts, etc. ("Plaintiff's Responsive SMF") (Docket No. 13) ¶¶ 1, 3, 7. The defendants have received training in arrest procedures, including the lawful use of force in connection with arrests, at both the Maine Criminal Justice Academy and the Lewiston Police Department. *Id*. ¶ 10. The Lewiston Police Department has a standard operating procedure governing the lawful use of force, including deadly force, and the defendants have received training regarding this standard operating procedure. *Id*. ¶ 11. They also have received training regarding state and federal laws that govern a police officer's use of force, including deadly force. *Id*. ¶ 12. Lewiston police officers undergo firearms qualification every six months and, as part of those qualification procedures, they receive training on the laws and standard operating procedures governing the use of deadly force. *Id*. ¶ 13. The standard operating procedures require officers (i) to use force in a controlled and confined manner, (ii) whenever possible first to attempt to defuse a person's fear and anger to avoid escalating a situation, (iii) to use lesser degrees of force before using deadly force, (iv) to use deadly force only after careful attention to the facts and only when necessary to counter a serious and imminent threat of deadly force by another, and (v) to terminate the use of physical force immediately upon the cessation of resistance. Statement of Additional Facts ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF, beginning at 20) ¶ 11; Defendants' Reply Statement of Material Facts ("Defendants' Responsive SMF") (Docket No. 36) ¶ 11. The procedure provides that officers do not have authority to discharge their firearms (i) where it is foreseeable that less force can accomplish the purpose without unreasonably endangering the officer or others, (ii) to effect an arrest for a Class D or E crime unless necessary to protect themselves or others from death or serious bodily injury and all other alternatives have failed, and (iii) where there is merely a suspicion that an officer or other person is in imminent danger of deadly force. *Id*. ¶ 14.

On December 17, 2003 at approximately 9:30 p.m., Vierling was in the report room of the Lewiston police station with Conley and Syphers.  Defendants' SMF ¶¶ 16-17; Plaintiff's Responsive SMF ¶¶ 16-17.  They were among the patrol officers working under the supervision of Lt. Michael McGonagle that night.  *Id*. ¶¶ 18-19.  The patrol supervisor, Sgt. Michael Whalen, was out on the streets on patrol.  *Id*. ¶ 19.  Each officer carried mace, hot pepper spray or oleoresin capsaicin on his or her duty belt or waist.  Plaintiff's SMF ¶ 20; Defendants' Responsive SMF ¶ 20.  These sprays were available to spray in the eyes of any person who might be resisting arrest in order to subdue that person.  *Id*. ¶ 21.

The plaintiff parked his truck in a vacant lot in Lewiston and sliced his wrists and stabbed himself repeatedly in the chest, about thirty times.  Defendants' SMF  ¶ 22; Plaintiff's Responsive SMF ¶ 22.  As he was in the process of trying to commit suicide, a car pulled up behind him and the plaintiff assumed it was the police.  *Id*. ¶ 23.  The plaintiff left the vacant lot and drove to the police compound to "show them" because he believed the police had interfered with his suicide.  *Id*. ¶ 24.  At approximately 9:40 p.m. Conley went out the rear door of the Lewiston police station and walked out into a fenced area at the rear of the building known as the "compound."  *Id*. ¶ 25.  There are ten parking spaces in the compound.  Plaintiff's SMF ¶ 37; Defendants' Responsive SMF ¶ 37.  Police cruisers were parked in the compound and Conley was going to her cruiser to retrieve something from it.  Defendants' SMF ¶ 26; Plaintiff's Responsive SMF ¶ 26.  As she came out the rear door of the police station, Conley saw a pickup truck drive through the Park Street entrance to the compound.  *Id*. ¶ 27.  She did not recognize the vehicle and could not see the operator.  *Id*. ¶ 28.  She continued to walk toward her cruiser.  *Id*. ¶ 29.  She could see that there was no passenger in the truck.  *Id*. ¶ 31.

The plaintiff jumped out of his truck, ran to the tailgate, grabbed his hammer and started to smash car windows.  *Id*. ¶ 36.  Conley heard the driver's side door open on the truck and then heard

loud smashing sounds coming from the area where the cruisers were parked. *Id.* ¶¶ 32, 35. Conley could also hear a man shouting "f— the police," "f—ing cops" and other obscenities. *Id.* ¶ 38. She immediately called on her portable radio for someone to come from inside the station to help her in the compound. *Id.* ¶ 40. When Conley was able to see around the truck, she saw the plaintiff striking a parked cruiser. *Id.* ¶ 42. The plaintiff was wearing a flannel shirt and had blood all over his right front. *Id.* ¶ 48.

Shortly after Conley left the report room, Vierling and Syphers heard an urgent call from her requesting assistance in the compound. *Id.* ¶ 61. They immediately ran from the report room to the rear door of the station. *Id.* ¶ 62. As they reached the door, they could hear gunshots outside. *Id.* ¶ 63. McGonagle also heard Conley's voice calling for immediate help in the compound, in an excited and urgent tone. *Id.* ¶¶ 66-67. He heard Vierling and Syphers running down the hall from the report room to the back door of the station. *Id.* ¶ 68. When they opened the door, he could hear the sound of gunfire in the compound. *Id.* ¶ 69. Vierling saw that Conley had her weapon drawn but did not see any muzzle flash indicating that she had been the one who fired the shot. *Id.* ¶ 70. Syphers saw that Conley had drawn her weapon but he did not know if she had fired that shot or if someone else had fired at her. *Id.* ¶ 72.

Vierling and Syphers drew their weapons and began to look for the source of the gunshot. *Id.* ¶¶ 73-74. Vierling saw a pickup truck parked in the compound and the plaintiff on the ground. *Id.* ¶ 78. Syphers saw the plaintiff approximately ten feet from Conley. *Id.* ¶ 79. They heard Conley order the man to stay down and not move. *Id.* ¶ 80. Syphers also ordered the man to stay down, not move and show the officers his hands. *Id.* ¶ 81. The plaintiff was lying on his right side. *Id.* ¶ 84. The plaintiff's back was to Syphers and Vierling and his hands were not visible to them. *Id.* ¶ 86. It

was dark outside and raining.  *Id*. ¶ 90.[2]   Vierling believed that the plaintiff was armed and was positioning himself to fire at Conley again.  *Id*. ¶ 95.[3]   Syphers held a similar belief.  *Id*. ¶ 99.[4] Vierling claims that he did not fire his weapon at the plaintiff until the plaintiff "began to roll in a quick movement."  Plaintiff's SMF ¶ 157; Defendants' Responsive SMF ¶ 157.  When the plaintiff was rolling onto his back, Syphers and Conley were yelling, "Show me your hands.  Stay down."  *Id*. ¶ 172.  The plaintiff kept his hands obscured from the view of Syphers and Vierling despite this command.  *Id*. ¶ 205.  Both Vierling and Syphers fired at the plaintiff.  Defendants' SMF ¶¶ 97, 99; Plaintiff's Responsive SMF ¶¶ 97, 99.[5]  At the time they fired their weapons, Vierling and Syphers were approximately 10 to 15 feet away from the plaintiff.  *Id*. ¶ 100.[6]  As soon as all firing ceased, Syphers yelled, "Shots fired in the compound" into his radio.  *Id*. ¶ 103.

By the time McGonagle reached the door and looked out the window, all firing had ceased. *Id*. ¶106.  He saw all three officers pointing their weapons at a man who was on the ground in the compound a short distance from them.  *Id*. ¶ 108.  The man was partly facing Park Street and partly facing the officers around him.  *Id*. ¶ 109.  Once he was outside, McGonagle heard one of the officers command the plaintiff to "drop the hammer."  *Id*. ¶ 111.[7]  Vierling made his way behind Conley and into a position where he could see the defendant's front.  *Id*. ¶ 113.  He then advised Syphers that he could safely secure the plaintiff and Syphers placed handcuffs on the plaintiff.  *Id*. ¶¶ 116-17.  The

---

[2] The plaintiff purports to deny the paragraph of the defendants' statement of material facts in which this information appears but the denial does not address this factual assertion.  Plaintiff's Responsive SMF ¶ 90.  This information is therefore deemed admitted because it is supported by the citation given to the summary judgment record.

[3] The plaintiff purports to deny this paragraph of the defendants' statement of material facts, but the denial is not responsive to the substance of the paragraph, Plaintiff's Responsive SMF ¶ 95, and the source cited in support of the denial, a resident of a nearby apartment, could not have known what Vierling believed at the time.

[4] The plaintiff purports to deny this paragraph of the defendants' statement of material facts in a manner identical to his purported denial of paragraph 95.  Plaintiff's Responsive SMF ¶ 99.  The denial is rejected for the same reasons stated above in n.3.

[5] See n.4 above.

[6] See n.4 above.

[7] See n.4 above.

plaintiff struggled and tried to get off the ground. *Id*. ¶ 130. The handcuffs were removed shortly afterward so as not to hinder first aid efforts. *Id*. ¶ 132.

McGonagle immediately called for an ambulance to be sent to the compound for the plaintiff. *Id*. ¶ 133. Other officers arrived and began to render first aid to the plaintiff while the ambulance was en route. *Id*. ¶ 134. McGonagle left Whalen in charge in the compound and took the defendants into the police station where he put them into separate rooms and secured their weapons. *Id*. ¶ 135. He then called the Attorney General's office so that its shooting investigation team could be dispatched immediately to the scene. *Id*. ¶ 136.

At that time none of the three officers had a clear memory of how many shots each had fired. *Id*. ¶¶ 146, 152, 157. They have since been advised, as a result of the Attorney General's investigation, that six rounds were fired from Conley's gun, Vierling fired six times and Syphers fired three times. *Id*. ¶¶ 147, 153, 158.

The plaintiff was hospitalized for several weeks after the shooting. Plaintiff's SMF ¶ 228; Defendants' Responsive SMF ¶ 228. He was diagnosed after the incident as having bipolar disorder with schizophrenic episodes. *Id*. ¶ 229. He was struck in the left hip requiring a hip replacement. *Id.* ¶ 231.

At all relevant times, Andrew D'Eramo was employed as the head of the 911 emergency dispatch center, a regional facility for emergency communications serving the cities of Lewiston and Auburn. Defendants' SMF ¶ 161; Plaintiff's Responsive SMF ¶ 161. All radio traffic between police officers in those two cities is routed through the dispatch center. *Id*. ¶ 162. All calls into the center and all calls among police officers are recorded at the center. *Id*. ¶ 163. As calls are recorded a computer notes the time the transmission begins, to the second, as well as the duration of the

8

transmission.  *Id*. ¶ 164.  A transcript of the relevant radio traffic from December 17, 2003 was prepared for the post-event investigation.  *Id*. ¶¶ 166-67.

The initial call begins at 9:35:39 p.m. and is a request by a female Lewiston police officer identified as officer number 201 stating:  "Get someone in the compound now."  *Id*. ¶ 169.  The dispatcher who received that call began to transmit a request to "any unit near the compound" but a male voice cut off the dispatcher's transmission with his own transmission of "shots fired, shots fired, shots [indistinguishable] compound, shots fired."  *Id*. ¶ 170.  The entire sequence of events from Conley calling for help in the compound to the final shots being fired by any officer took only ten seconds according to the dispatch recordings.  *Id*. ¶ 172.

At 9:45 p.m. on December 17, 2003 Jennifer Boren was sitting at an open window in her fourth floor apartment at 333 Lisbon Street In Lewiston.  Plaintiff's SMF ¶ 94; Defendants' Responsive SMF ¶ 94.  At that time Boren heard a man and a woman yelling in the police parking lot, which she could see from the window.  *Id*. ¶¶ 94-95.  Boren was surprised to see that the woman was a police officer.  *Id*. ¶ 97.  She saw the man raise his hand in the air; the officer then drew her gun and shot at the man.  *Id*. ¶ 100.  Boren saw two male officers come into the parking lot after the man fell to the ground.  Id. ¶ 112.  Boren heard at least another five gunshots while the man was on the ground.  *Id*. ¶ 109.  She gave a statement to the police on the evening of December 17, 2003 and a written statement the next morning at the police station.  *Id*. ¶ 117.  She was asked by the police whether the man had a hammer and she said, "No."  *Id*. ¶ 105.

The plaintiff was indicted by the Androscoggin County grand jury on January 5, 2004 for the crime of criminal threatening with the use of a dangerous weapon, a hammer, by intentionally or knowingly placing Conley in fear of imminent bodily injury, a Class C felony.  Defendants' SMF ¶ 173; Plaintiff's Responsive SMF ¶ 173.  The plaintiff was also charged with criminal mischief, a

Class C felony, for the damage he caused to the cruisers in the compound. *Id*. ¶ 174. The plaintiff

pleaded guilty to the criminal threatening charge on September 23, 2004 and the criminal mischief

charge was dismissed. *Id*. ¶ 175. Pursuant to a plea agreement, the plaintiff was sentenced to four

years' incarceration, all suspended, with a four-year period of probation. Plaintiff's SMF ¶ 234;

Defendants' Responsive SMF ¶ 234.

## III. Discussion

The complaint is brought in six counts, four of which are substantive. Complaint at 10-13.

Count III is brought under 42 U.S.C. § 1983 and alleges the federal constitutional violations. *Id*.

¶¶ 43-47. Count IV is derivative of Count III, seeking recovery of attorney fees pursuant to 42 U.S.C.

§ 1988. *Id*. ¶¶ 48-49. Count V alleges violation of the Maine Civil Rights Act, 5 M.R.S.A. § 4682, *id*.

¶¶ 50-53, which is construed in the same manner as civil rights claims asserted under the federal

statute. *See Dimmitt v. Ockenfels*, 220 F.R.D. 116, 123 (D. Me. 2004). Count I alleges assault and

battery, a state common-law claim, and Count II alleges violation of 15 M.R.S.A. § 704, another state-

law claim. Complaint ¶¶ 35-42. Count VI seeks punitive damages on all claims. *Id*. ¶¶ 54-56.

Because this court's jurisdiction depends on the viability of the federal claim, I will first address

Count III.

## A. Excessive Force — Count III

The defendants contend that the only federal claim asserted by the plaintiff is one for the use of

excessive force in violation of the Fourth Amendment. Motion at 8. The plaintiff appears to agree that

his federal claim alleges only an excessive use of force against him by the defendants, Memorandum of

Law in Opposition to Motion for Summary Judgment ("Opposition") (Docket No. 15) at 12, but he

asserts that in Count III he "seeks redress . . . for violations of [his] (i) Fourth Amendment right not to

be arrested (i.e., 'seized') through the use of excessive force and (ii) his rights to substantive and

procedural due process rights [sic]," *id*. at 13.  However, he never mentions due process again in his opposition.

The complaint cannot reasonably be construed to allege a federal cause of action other than the use of excessive force by the defendants.  Under these circumstances, "all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted).  The defendants are entitled to summary judgment on any claims of violation of substantive due process.  The complaint cannot reasonably be read to allege a violation of procedural due process rights, but even if it could be so read, a procedural due process claim may not be brought under section 1983 where an adequate state remedy exists. *Young v. Knox County Deputy*, 68 F.3d 455 (table), 1995 WL 610338 (1st Cir. 1995); *Reid v. New Hampshire*, 56 F.3d 332, 341 (1st Cir. 1995).  The complaint in this action already includes two claims under state law; clearly, an adequate state remedy exists.  The defendants are also entitled to summary judgment on any procedural due process claims.

With respect to the Fourth Amendment claim, the defendants contend that they are entitled to qualified immunity from the plaintiff's claims.  Motion at 9-14.  The First Circuit has provided guidance for trial courts dealing with a qualified-immunity defense asserted in response to a claim of excessive force:

> The defendants are entitled to qualified immunity unless (1) the facts alleged show the defendants' conduct violated a constitutional right, and (2) the contours of this rights are "clearly established" under then-existing law so that a reasonable officer would have known that his conduct was unlawful. *Dwan v. City of Boston*, 329 F.3d 275, 278 (1st Cir. 2003) (citing *Saucier* [*v. Katz*], 533 U.S. [194], 201 [2001]).  *Saucier* instructs that the reviewing court should begin with the former question.  "A court required to rule upon the qualified immunity issue must consider, then, this threshold

> question: Taken in the light most favorable to the party asserting the injury,
> do the facts alleged show the officer's conduct violated a constitutional
> right?  This must be the initial inquiry." *Saucier*, at 201 . . . .

*Santana v. Calderón*, 342 F.3d 18, 23 (1st Cir. 2003).  The defendants begin by asserting that they did

not violate the plaintiff's Fourth Amendment rights.  Motion at 10-12.  The plaintiff responds that a

"reasonable jury" could find that his Fourth Amendment rights were violated "[b]ased on the testimony

of witness Boren and Spearman and the recollection of Berube that he was shot as he was striking a

vehicle and based on the fact the hammer was not found near Berube's body."  Opposition at 15.

The objective reasonableness of an officer's conduct provides the basis on which to conclude

whether a Fourth Amendment constitutional right was violated; the use of deadly force is objectively

reasonable when an "officer has probable cause to believe that the suspect poses a significant threat of

death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

This standard is "comparatively generous to the police where potential danger, emergency conditions

or other urgent circumstances are present." *Roy v. Inhabitants of City of Lewiston*, 42 F.3d 691, 695

(1st Cir. 1994).  The defendants contend that, as to Conley, the necessary facts to establish this element

"are proven even for purposes of this civil case, because Plaintiff was indicted for, and pled guilty to,

a felony charge of criminal threatening, which elements specifically included placing Officer Conley

in fear of imminent bodily injury with the use of a dangerous weapon, a hammer."  Motion at 10.  The

plaintiff did not respond to this argument in the substantive portions of his opposition.

The defendants returned to the argument in their reply memorandum.  Defendants' Reply

Memorandum in Support of Their Motion for Summary Judgment ("Reply") (Docket No. 37) at 1-3.

The plaintiff then filed a motion to strike that portion of the defendants' reply or, in the alternative, for

leave to file a surreply on this issue, contending that "[t]hese arguments are <u>not</u> <u>reply</u> arguments and

instead set forth argument and authorities that could have been raised in Defendants' initial motion and

memorandum." Motion to Strike or For Leave to File Surreply Memorandum (Docket No. 38) (emphasis in original) at 1. It is not correct to characterize this argument as an "[i]ssue[] raised for the first time in [a] reply memorand[um]," which will not be considered by this court. *Mitsubishi Caterpillar Forklift Am., Inc. v. Superior Serv. Assocs., Inc.*, 81 F.Supp.2d 101, 114 (D. Me. 1999). The argument was made in the initial motion, albeit not in as well-developed fashion as it was in the reply memorandum, but sufficiently to put the plaintiff on notice of the argument. Indeed, the plaintiff submitted with his opposition an affidavit of the attorney who represented him in the underlying criminal action which could only be relevant to this argument. Affidavit of Thomas Goodwin, Esq. (Docket No. 21). The section of the plaintiff's opposing memorandum titled "Summary of Facts" includes a recitation of his version of the facts surrounding the criminal charges and his plea. Opposition at 10-11. The plaintiff's motion to strike or for leave to file a surreply is **DENIED**.

"It is beyond doubt that issue preclusion applies to a federal civil rights action following a criminal conviction in state court." *Napier v. Town of Windham*, 187 F.3d 177, 184 (1st Cir. 1999) (internal quotation marks and citation omitted). Federal courts must give preclusive effect to judgments in state court whenever the courts of that state would do so. *Id*. "In Maine, a prior criminal conviction conclusively establishes all facts essential to the final judgment of conviction." *Id*. (internal quotation marks and citation omitted). The facts that are conclusively established by the plaintiff's conviction in this case are those that were essential to the conviction. Here, the defendant was convicted of criminal threatening with a dangerous weapon by intentionally or knowingly placing Conley in fear of imminent bodily injury. Defendants' SMF ¶¶ 173, 175; Plaintiff's Responsive SMF ¶¶ 173, 175. This was sufficient to establish that Conley had probable cause to believe that the plaintiff posed a significant threat of death or serious harm to her at some point during the events in the

police station parking lot.  None of the evidence[8] cited by the plaintiff may override the conclusive effect of the conviction.

That does not end the matter, however.  The plaintiff's guilty plea does not specify the point at which Conley was placed in fear of imminent bodily injury.  Based on the evidence in the summary judgment record, this fear must have arisen when Conley first confronted the plaintiff. The defendant's witness, Jennifer Boren, states that he raised his hand before Conley drew her gun and before the other officers came out of the building.  Affidavit of Jennifer Boren  ("Boren Aff.") (Docket No. 20) ¶¶ 6, 12.  I conclude that the plaintiff is estopped to argue that he did not place Conley in fear of imminent bodily injury at that point.   However, as events proceeded there may have been a pause in Conley's firing, Defendants' SMF ¶¶ 70-86, Plaintiff's Responsive SMF ¶¶ 70-86, and the facts about her conduct are very much in dispute, *id*.  ¶¶ 59-60, 65, 70-71, 92-102, 104, 111, 119-20; *see also* Plaintiff's SMF ¶¶ 99, 101-04, 107, 110-11, 113, Defendants' Responsive SMF ¶¶ 99, 101-04, 107, 110-11, 113.[9]  I cannot conclude, given the state of the record,[10] that the plaintiff's conviction also

---

[8] The defendants object to each source of evidence cited by the plaintiff.  I will address their objections to the  affidavit of Jennifer Boren in the following footnote.  With respect to the "testimony" of "witness Spearman," to which the plaintiff does not provide a citation to the summary judgment record, *but see* Plaintiff's SMF ¶ 185, the only reference to an individual of that name of which I am aware in the summary judgment record is a Witness Statement signed by a Roosevelt Spearman, Exh. 2 to Deposition of James Theiss (Docket No. 31).  As the defendants point out, Reply at 6, this is not a sworn statement and as such may not be used over objection as evidence for purposes of summary judgment.  The plaintiff's characterization of this statement as "the Spearman sworn statement," Opposition at 18, is, from all that appears in the record, a troubling misrepresentation.  I will not consider the substance of the statement.  The "recollection of Berube that he was shot as he was striking a vehicle," Opposition at 15, is not accurately represented. In support of this assertion the plaintiff cites to his deposition.  Plaintiff's SMF ¶¶ 79, 81.  At the cited pages, the plaintiff's lawyer asks him, "And you do recall turning around and then getting shot, is that correct?" and he answers, "Well, that's about what I remember." Deposition of Vince A. Berube (Docket No. 9) at 96.  He was later asked, "And could you tell me what your recollection is about . . . the timing between your last hammering the windshield and getting shot?" and he replied, "I thought it was quick.  You know, I thought it was fast." *Id*. at 106.  His attorney then asked, "Immediately after you hammered the windshield the last time, is that correct?" and the plaintiff responded, "Yeah." *Id*.  This is *not* testimony that the plaintiff was shot "as he was striking a vehicle."

[9] The defendants contend that all of the cited paragraphs from the plaintiff's statement of material facts that rely on Boren's affidavit as authority should be stricken because they "contain[] improper opinion testimony from a lay witness." Defendants' Responsive SMF ¶¶ 99, 101-04, 107, 110-11 & 113.  I have reviewed the affidavit and conclude that Boren is testifying to facts as she saw them.  For purposes of summary judgment, the cited paragraphs do not present inadmissible expert testimony.

[10] *See generally Ashe v. Swenson*, 397 U.S. 436, 444 (1970) (where previous judgment based on general verdict, court must examine record of prior proceeding, taking into account pleadings, evidence and charge, and conclude whether rational jury could have grounded verdict on issue other than that which defendant seeks to foreclose from consideration).  This is rather difficult to accomplish (*continued on next page*)

applies to the shots fired by Conley after the plaintiff fell to the ground. The facts about that portion of her shooting at the defendant are not necessarily resolved by the conviction. Accordingly, Conley is entitled to summary judgment on the basis of qualified immunity as to the shots she fired before the plaintiff fell to the ground, because those shots did not constitute a violation of the Fourth Amendment. This argument does not apply to the other defendants.

Vierling and Syphers contend that "[i]t was reasonable under the circumstances" for them "to believe that someone else in the compound was armed and shooting, or at least in a position to shoot, based on their observations in the seconds after they exited the building and entered the scene of an ongoing shooting." Motion at 11. Boren's affidavit directly disputes this contention. If their conduct did violate the Fourth Amendment, it is highly unlikely that a reasonable officer would not have known that shooting the plaintiff constituted such a constitutional violation. The right not to be shot by law enforcement officers while on the ground and offering no threat to the officers can only be said to be clearly established. Accordingly, Vierling and Syphers are not entitled to summary judgment on the ground of qualified immunity, the only basis proffered for their motion for summary judgment on this count.

## B. Excessive Force — Count V

Because the defendants offer no argument with respect to this count that differs from their arguments with respect to Count III, Motion at 14-15, the same result obtains with respect to this count.

## C. Assault & Battery — Count I

The defendants contend that they are immune from civil liability on this count under the Maine Tort Claims Act, specifically 14 M.R.S.A.§ 8111(1)(C). Motion at 15-16. That statute provides:

---

where, as here, the criminal proceeding was resolved by a guilty plea.

15

> **1. Immunity.**  Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:
>
> \* \* \*
>
> **C.**  Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid . . . .

14 M.R.S.A. § 8111(1)(C).  A police officer's use of force to execute a warrantless arrest is considered discretionary conduct under the Maine Tort Claims Act.  *Hodsdon v. Town of Greenville*, 52 F.Supp.2d 117, 126 (D. Me. 1999).  A police officer is immune from civil liability for discretionary conduct under section 8111(1)(C) unless the officer's conduct clearly exceeded the scope of any discretion the officer could have possessed in his or her official capacity as a police officer.  *Id*.

In response, Opposition at 18, the plaintiff points to 14 M.R.S.A. § 8111(1)(E), which provides immunity for any intentional  act or omission within the course and scope of a public employee's employment except in cases in which the employee's actions are found to have been in bad faith.  The defendants assert, in conclusory fashion, that "[t]he 'bad faith' proviso of Section 8111(1)(E) is not implicated by the facts of this case."  Motion at 15.  The Maine Law Court has held, however, that the bad faith provision of section 8111(1)(E) does not create an exception to the discretionary immunity defense set out in section 8111(1)(C).  *Dall v. Caron*, 628 A.2d 117, 119 (Me. 1993).  Accordingly, I will not consider further the parties' discussion of the defendants' possible bad faith.

Law enforcement officers are entitled to immunity under subsection C "[u]nless the evidence could reasonably be construed to show that the conduct underlying the claim[] of assault [and] battery . . . was so egregious as to clearly exceed any discretion the officers could have possessed under the circumstances."  *Dimmitt,* 220 F.R.D. at 125 .  "[W]here a plaintiff's summary judgment statements of

material facts generate a genuine issue on the use of excessive force in making an arrest . . . , discretionary function immunity is unavailable because the use of excessive force is beyond the scope of an officer's discretion." *Blackstone v. Quirino*, 309 F.Supp.2d 117, 130 (D. Me. 2004) (citation and internal punctuation omitted).   That is the case here.   Boren's affidavit and the plaintiff's deposition testimony establish the possibility that each of the defendants might have used excessive force against the plaintiff.[11] Boren Aff. ¶¶ 5-11, 12. The defendants obviously dispute this; the matter must therefore be resolved at trial.

Conley is entitled to summary judgment on this claim only insofar as the plaintiff's criminal conviction entitles her to summary judgment for that portion of her actions that are found to have been undertaken in fear of imminent bodily injury.   As previously discussed, this state of affairs existed at least until the plaintiff fell to the ground; it remains to be established at trial whether it also existed thereafter.

Vierling and Syphers are not entitled to summary judgment on Count I.

### D.  15 M.R.S.A. § 704 — Count II

The defendants contend that they are entitled to summary judgment on this count because the facts in this case "are certainly more compelling tha[n] those in either *Leach* or *Creamer*," two cases in which the Law Court upheld grants of summary judgment in favor of police officers under this statute.   Motion at 16.   The statute provides:

---

[11] Boren states that she "heard at least another five gunshots at the man while he was on the ground."  Boren Aff. ¶ 9.  It is not clear whether she heard these shots before or after Vierling and Syphers arrived on the scene.  Since Conley fired only six shots, however, Defendants' SMF ¶ 147; Plaintiff's Responsive SMF ¶ 147, and Boren states that Conley had previously fired two or three shots, Boren Aff. ¶ 6, one or two of these shots must have been fired by Vierling or Syphers. The plaintiff has offered testimony that he heard shots after he was on the ground, curled into a ball, Plaintiff's SMF ¶¶ 90-91, and the testimony of Vierling and Syphers makes clear that the plaintiff was already on the ground before they fired, Defendants' SMF ¶¶ 78, 80-82, 84-85, 87, 93, 97, 99.  The law requires the drawing of every favorable inference that is available to the plaintiff under the summary judgment standard in order to determine whether he may avoid the entry of summary judgment in favor of Vierling and Syphers on this point.  On this record, I can only conclude that the evidence is adequate, although barely, to allow the drawing of an inference that they used excessive force.

> Every sheriff, deputy sheriff, constable, city or depute marshal, or police
> officer shall arrest and detain persons found violating any law of the State or
> any legal ordinance or bylaw of a town, until a legal warrant can be obtained
> and may arrest and detain such persons against whom a warrant has been
> issued though the officer does not have the warrant in his possession at the
> time of the arrest, and they shall be entitled to legal fees for such service; but
> if, in so doing, he acts wantonly or oppressively, or detains a person without
> a warrant longer than is necessary to procure it, he shall be liable to such
> person for the damages suffered thereby.

15 M.R.S.A. § 704.  In a brief response, the plaintiff contends that the facts set forth in Boren's affidavit would allow a jury to find "that there was a grossly excessive abuse of force by each of the Defendants."  Opposition at 20.  As I have noted before, when the evidence is limited to Boren's statement, it is only by the most indulgent drawing of inferences that one may conclude that there is any evidence of the use of excessive force by Vierling and Syphers, let alone any "wanton or oppressive" action by them.  Judge Hornby of this court has suggested that enactment of the Maine Tort Claims Act abrogated 15 M.R.S.A. § 704.  *Jackson v. Inhabitants of the Town of Sanford*, Civ. No. 94-12-P-H, 1994 WL 589617 at *7 n.2 (D. Me. Sept. 23, 1994), but the Law Court subsequently declined to reach the question, *Creamer v. Sceviour*, 652 A.2d 110, 115 (Me. 1995).  Given this state of affairs, I conclude that the claim should go forward.  *See Comfort v. Town of Pittsfield*, 924 F.Supp. 1219, 1236 n.15 (D. Me. 1996).

### E.  Attorney Fees — Count IV

Because some portion of the plaintiff's claims under 42 U.S.C. § 1983 will go forward if my recommendation is adopted by the court, summary judgment on Count IV, which seeks an award of attorney fees pursuant to 42 U.S.C. § 1988, Complaint ¶ 49, is not appropriate.

### F.  Punitive Damages — Count VI

The defendants contend that punitive damages in connection with the plaintiff's federal-law claims "are not warranted in this case because Defendants acted only in response to a public safety

emergency and deadly force situation created by Plaintiff himself, and only then after having ordered Plaintiff to stop, put down his weapon, to lie on the ground and to show his hands."  Motion at 17. Many of these factual assertions are in dispute.  Punitive damages are available in an action brought under 42 U.S.C. § 1983 where a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Here, the testimony of the plaintiff and Boren would allow a jury to conclude that such reckless or callous indifference was present on the night of December 17, 2003.

Punitive damages are available on the state-law claims upon a showing of express or implied malice.  *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985).  The defendants merely assert that "[i]t necessarily follows that, if the Plaintiffs [sic] are not entitled to punitive damages under the lesser federal standard, they cannot be entitled to punitive damages under Maine law under the facts of this case."  Motion at 17. The premise of this argument having failed, it is necessary to address the merits of the claim.  There is no evidence in the summary judgment record of express malice on the part of any of the defendants.  Implied malice is "deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, [that] is so outrageous that malice toward a person injured as a result of that conduct can be implied."  *Tuttle*, 494 A.2d at 1361.  Recklessness is not sufficient. *Id*.  Again, Boren's affidavit provides evidence of outrageous conduct by the defendants that, if believed by a jury, would allow for the imposition of punitive damages under this standard. The defendants are not entitled to summary judgment on Count VI.

## IV.  Conclusion

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be **GRANTED** as to any claims for violation of the plaintiff's rights to substantive or procedural due

process under federal law and as to any claims under federal and state law for the use of excessive force by defendant Conley in circumstances where the plaintiff's conviction in state court for criminal threatening necessarily involved the plaintiff's placing Conley in fear of imminent bodily injury by the plaintiff, and otherwise **DENIED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of September, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge